# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

THOMAS ROY GORDON, )
)
        Plaintiff, )
)
v. ) Case No. CIV-16-368-SPS
)
NANCY A. BERRYHILL, )
Acting Commissioner of the Social )
Security Administration,[1] )
)
        Defendant. )

## OPINION AND ORDER

The claimant Thomas Roy Gordon requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g). The claimant appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id.* § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799,

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id.* §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on December 15, 1960, and was fifty-four years old at the time of the administrative hearing (Tr. 148). He has a high school education, some college, and has worked as a retail store manager, cashier, tractor operator, unit assembler, and industrial truck operator (Tr. 63, 173). The claimant alleges that he has been unable to work since October 1, 2012, due to diabetes, neuropathy, hand numbness, and high blood pressure (Tr. 172).

**Procedural History**

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, on September 4, 2013 (Tr. 148-49). His application was denied. ALJ Doug Gabbard, II held an administrative hearing, and determined that the claimant was not disabled in a written opinion dated February 26, 2015 (Tr. 12-37). The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at steps four and five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light

work as defined in 20 CFR § 404.1567(b) with occasional climbing, balancing, stooping, kneeling, crouching, and crawling, and never walking on uneven surfaces or pushing or pulling with his feet (Tr. 22). Additionally, the ALJ found the claimant must avoid even moderate exposure to dust, fumes, odors, and other pulmonary irritants, and have the ability to change positions every ten to fifteen minutes without leaving the workstation (Tr. 22). The ALJ concluded that the claimant was not disabled because he could return to his past relevant work as a cashier, and alternatively because there was work he could perform in the national economy, *e. g.*, small product assembler and arcade attendant (Tr. 32-36).

## Review

The claimant contends that: (i) the ALJ failed to properly analyze the medical opinions of treating physician Dr. Lewis and consultative examiner Dr. Javersak, and (ii) the Appeals Council failed to properly consider treating physician Dr. Farrow's medical opinion evidence. Because the ALJ's decision is not supported by substantial evidence in light of the evidence submitted to the Appeals Council, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further proceedings.

The ALJ found that the claimant had the severe impairments of diabetes, peripheral neuropathy, right knee osteoarthritis, and emphysema, and the non-severe impairments of obesity, hypertension, chest pain, hyperlipidemia, indigestion, constipation, dizziness, background retinopathy, fatigue, sleeping problems,

hyperprolactinemia, headaches, and depressive disorder NOS (Tr. 14-21). He also found that the claimant's alleged gout and hand neuropathy were not medically determinable (Tr. 21). The medical evidence relevant to this appeal reveals that the claimant presented to Caring Hands Healthcare Center ("CHHC") on September 20, 2013, and reported pain in his feet radiating to his knees, and dizziness, weakness, and blurred vision when he is exposed to heat (Tr. 236). Nurse practitioner Heather Johnston examined the claimant and found he had normal range of motion, muscle strength, and stability in all extremities with no edema or pain on inspection (Tr. 239). As to the claimant's gait, Ms. Johnston noted it was antalgic, and that the claimant limped and used a cane, but that he was able to bear full weight (Tr. 239). The claimant returned to CHHC on December 23, 2013, and Dr. Douglas Brown diagnosed him with diabetes with neurological manifestations (Tr. 274).

On October 30, 2013, the claimant presented to Dr. Shayne Javersak, a chiropractor, and reported pain in his feet that began ten years earlier with increasing numbness since that time (Tr. 250-54). Dr. Javersak administered no treatment, but noted the claimant exhibited extreme pain and difficulty with mobility and had sluggish reflexes in his lower extremities (Tr. 251-52). The following day, Dr. Javersak completed a medical opinion form regarding absences from work, stating that the claimant would be absent from work three or more days per month, and noting that his main limitation was his inability to walk due to foot pain, unsteadiness, and weakness (Tr. 255). Dr. Javersak also completed forms regarding sedentary work requirements, a

clinical assessment of pain, and a physical RFC assessment (Tr. 256-66). He indicated, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, lift/carry ten pounds, lift/carry five pounds repetitively, utilize both hands for manipulation, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, or attend any employment on a sustained basis (Tr. 256). He indicated that the claimant's pain was irretractably and virtually incapacitating, that physical work activities would increase his pain to such an extent that rest and/or medication would be necessary, and that his pain would reduce basic mental work activities to such a degree that his functioning in the task would be inadequate or abandoned (Tr. 257). Additionally, Dr. Javersak indicated that the claimant had a poor prognosis, and that his pain was ten out of ten when weight bearing and walking (Tr. 258). He stated that the claimant could sit for fifteen minutes at a time for about two hours total in an eight-hour workday, but could never stand or walk (Tr. 259-60). He indicated the claimant would need unscheduled breaks every fifteen to thirty minutes lasting fifteen to twenty minutes (Tr. 260). Dr. Javersak found the clamant could rarely twist (only while sitting), and could never stoop, crouch/squat, or climb ladders or stairs (Tr. 261). As to environmental restrictions, Dr. Javersak stated the claimant should avoid all exposure to extreme cold, extreme heat, and wetness, and should avoid even moderate exposure to high humidity (Tr. 266). Dr. Javersak concluded that the limitations he found had been applicable since 2003 (Tr. 266).

The claimant established care at Mercy Health Clinic in February 2014, and various providers treated him for depression, diabetes, hypertension, and gastroesophageal reflux disease through January 2015 (Tr. 278-89, 309-18, 348-49). On June 4, 2014, Dr. Larry Lewis, a physician at Mercy Health Clinic, completed a medical opinion form regarding absences from work, stating that the claimant would be absent from work three or more days per month due to poorly controlled diabetes, severe hyperglycemia, shortness of breath, neuropathy and decreased sensation causing injuries, and osteoarthritis in his right knee (Tr. 293). Dr. Lewis also completed forms regarding sedentary work requirements, a clinical assessment of pain, and a physical RFC assessment (Tr. 294-300). He indicated, *inter alia*, that the claimant could not stand/walk up to two hours in an eight-hour workday, sit up to six hours, lift/carry ten pounds, lift/carry five pounds repetitively, utilize both hands for manipulation, sustain activity at a pace and with the attention to task as would be required in the competitive workplace, or attend any employment on a sustained basis (Tr. 295). He indicated that the claimant's pain would cause more than a minimal effect on his ability to do basic work activities or activities of living on a day-to-day basis, that physical work activities would increase his pain to such an extent that rest and/or medication would be necessary, and that his pain would reduce his basic mental work activities to such a degree that his functioning in the task would be inadequate or abandoned (Tr. 294). Dr. Lewis also indicated that the claimant had a poor prognosis due to the extent of his illness, and that his pain increased with exertion and was present to some extent daily (Tr. 296). He stated that the claimant

could sit for thirty minutes at a time for at least six hours total in an eight-hour workday with frequent repositioning and rest, could stand five minutes at a time for less than two hours total in an eight-hour workday, but could not walk a city block (Tr. 297-98). Additionally, he indicated the claimant would need to walk for five minutes every hour; to take unscheduled breaks every thirty minutes to an hour lasting thirty minutes to an hour; to shift positions at will from sitting, standing, or walking; and to elevate his legs twelve inches for seventy-five percent of an eight-hour workday (Tr. 298). Dr. Lewis found the clamant could occasionally twist, rarely stoop or climb stairs, and never crouch or climb ladders (Tr. 299). Dr. Lewis concluded his assessment by indicating that the limitations he found were applicable for the previous five years "per history." (Tr. 300).

The claimant established care at Carl Albert Community Mental Health Center ("CAMH") on June 12, 2014, and reported depression for more than a year (Tr. 339-40). Dr. William Mays noted the claimant had a depressed mood; a sad and depressed affect; intact judgment, memory, and impulse control; fair insight; and good concentration, language, and fund of knowledge (Tr. 340). He diagnosed the claimant with major depressive disorder (Tr. 339-40). The claimant had similar appointments with Cindy Baugh, a nurse practitioner at CAMH, in September and November 2014 (Tr. 335-38).

At the administrative hearing, the claimant testified that he was unable to work due to neuropathy and numbness in his legs and weakness in his left ankle, which makes him unsteady when walking (Tr. 51). He further testified that he has pain in his right knee due to osteoarthritis (Tr. 52). Regarding his hands, the claimant testified he has no

feeling in his fingers, and cannot manipulate small objects (Tr. 55). He stated his main problems are his physical impairments, which cause his depression (Tr. 56-57). As to specific limitations, the claimant stated he could sit for fifteen or twenty minutes and stand for five or ten minutes before needing to change positions (Tr. 53).

In his written opinion, the ALJ summarized the claimant's hearing testimony, as well as most of the medical evidence contained in the record before him (Tr. 15-30). In discussing the opinion evidence, the ALJ gave Dr. Lewis's opinion little, if any weight, for the following reasons: (i) he was not a specialist in endocrinology, neurology, or orthopedics; (ii) he treated the claimant only three times prior to issuing his opinion; (iii) his opinion was inconsistent with his own treatment notes; and (iv) his opinion was inconsistent with other Mercy Clinic providers' treatment notes (Tr. 28). The ALJ gave Dr. Javersak's opinion little, if any, weight for the following reasons: (i) he examined the claimant once and provided no treatment, (ii) his opinion was inconsistent with other examination findings, (iii) his opinion was inconsistent with the claimant's reports to treating providers, and (iv) he stated his limitations were applicable ten years prior to examining the claimant (Tr. 29-30). Additionally, the ALJ gave little weight to the state agency physicians' opinion that the claimant could perform the full range of medium work, finding instead that due to the nature of the claimant's impairments, particularly his peripheral neuropathy, he was limited to light work (Tr. 23).

Following the issuance of the ALJ's written opinion, additional evidence was submitted to the Appeals Council. Included in that submission was a Medical Source

Statement ("MSS") from Dr. Farrow dated July 24, 2015. Dr. Farrow indicated in her opinion that she treated the claimant in February 2015, May 2015, and June 2015, but the record does not contain any treatment notes from Dr. Farrow. However, she opined that the claimant would be absent from work about three or more days per month due to dizziness, nausea, depression, and anxiety (Tr. 352). Dr. Farrow also opined that, in a routine work setting, the claimant could not respond appropriately to supervision, maintain concentration and attention for extended periods, handle normal work stress, or attend any employment on a sustained basis (Tr. 353). Additionally, Dr. Farrow completed a Mental RFC Questionnaire, in which she indicated, *inter alia*, that the claimant was unable to meet competitive standards in his ability to maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; and understand, remember, and carry out detailed instructions (Tr. 356-57). As objective support for her findings, Dr. Farrow referenced the claimant's depression, anxiety, dizziness, and pain (Tr. 354). Dr. Farrow concluded her assessment by stating that the limitations she found had been applicable for the previous five or six years (Tr. 358).

The claimant's contention regarding his impairments and their effect on his ability to work is bolstered by the evidence contained in the record but submitted after the ALJ issued his opinion. The Appeals Council was required to consider such additional evidence if it is: (i) new, (ii) material, and (iii) "relate[d] to the period on or before the

date of the ALJ's decision." *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004), *quoting Box v. Shalala*, 52 F.3d 168, 171 (8th Cir. 1995). The Appeals Council *did* consider this evidence (Tr. 5), and the undersigned Magistrate Judge has no difficulty concluding that it does qualify.

Evidence is new if it "is not duplicative or cumulative." *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), *quoting Wilkins v. Sec'y, Dep't of Health & Human Svcs.*, 953 F.2d 93, 96 (4th Cir. 1991). The additional records submitted to the Appeals Council were clearly new evidence. Dr. Farrow's MSS was never presented to the ALJ prior to his decision, nor did she opine as to the claimant's limitations in the treatment records the ALJ did review, thus her MSS is neither duplicative nor cumulative. Second, evidence is material "if there is a reasonable possibility that [it] would have changed the outcome." *Threet*, 353 F.3d at 1191, *quoting Wilkins*, 953 F.2d at 96. The evidence must "reasonably [call] into question the disposition of the case." *Threet*, 353 F.3d at 1191. *See also Lawson v. Chater*, 83 F.3d 432, 1996 WL 195124, at *2 (10th Cir. April 23, 1996) (unpublished table opinion). In this regard, Dr. Farrow's MSS indicated that the claimant was unable to meet competitive standards in several abilities and aptitudes needed for unskilled work due to depression, anxiety, dizziness, and nausea (Tr. 356). This evidence suggests the claimant has impairments discounted or completely unaccounted for in his RFC, and it is therefore clearly material.

Finally, the evidence is chronologically relevant if it pertains to the time "period on or before the date of the ALJ's Decision." *Kesner v. Barnhart*, 470 F. Supp. 2d 1315,

1320 (D. Utah 2006), *citing* 20 C.F.R. § 404.970(b). Dr. Farrow supported her opinion by referencing, *inter alia*, the claimant's diagnosis of depression, which she indicated was present for the past five or six years, thus her MSS is chronologically relevant to the ALJ's decision. Therefore, the evidence presented by the claimant after the ALJ's decision *does* qualify as new and material evidence under § 416.1470(b), and the Appeals Council considered it, so the newly-submitted evidence "becomes part of the record . . . in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." *Chambers*, 389 F.3d at 1142, *citing O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994).

In denying the claimant's request for review, the Appeals Council rejected Dr. Farrow's opinion by finding that the new evidence did not provide a basis for changing the ALJ's decision (Tr. 1-6). The Appeals Council is not required to make factual findings about a newly submitted treating physician opinion when it denies review. *See Vallejo v. Berryhill,* 849 F.3d 951, 955-56 (10th Cir. 2017). Nonetheless, the ALJ's decision must be supported by substantial evidence *including* any newly submitted evidence. *Id.* at 956, *citing O'Dell,* 44 F.3d at 858-59. Here, Dr. Farrow's opinion calls into question the claimant's ability to perform unskilled work, which is in direct conflict with the ALJ's determination that the claimant could perform a limited range of light work with no psychologically-based limitations. In light of this new evidence, the Court finds that the decision of the Commissioner is not supported by substantial evidence. On remand, the ALJ should re-assess the claimant's RFC in light of *all* the new evidence,

and then re-determine the work he can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of February, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**